UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                        Case Number 21-20355

v.                                         Honorable David M. Lawson

DONALD STANLEY LAVIGNE,

               Defendant.

_____/

## ORDER ADJUDICATING CERTAIN PRETRIAL MOTIONS AND MOTIONS *IN LIMINE*

Defendant Donald Stanley Lavigne is charged in an indictment with filing false tax returns, making false statements to a bankruptcy court, and making a false statement to a government agent. This matter is before the Court on several pretrial motions and motions *in limine* that were filed by the parties in advance of trial, which presently is scheduled for November 15, 2022. The motions were noticed for a hearing last Wednesday, but the defendant was not available to come to court then. Because the motions are fully briefed, and oral argument will not assist in their resolution, the Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2).

A grand jury sitting in this district returned a ten-count indictment against Lavigne on May 26, 2021 charging him with seven counts of willfully subscribing materially false income tax returns in violation of 26 U.S.C. § 7206(1), two counts of making false statements in bankruptcy in violation of 18 U.S.C. § 152(3), and one count of making a false statement to a government agent in violation of 18 U.S.C. § 1001(a)(3).

According to the indictment and the briefs the parties have filed, the government alleges that between 2013 and 2018, Lavigne earned commissions from working as an independent insurance salesman and making sales for a gutter-protection business. According to the

miscellaneous income forms (Forms 1099-MISC) insurance companies and the gutter-protection company filed with the Internal Revenue Service (IRS), Lavigne earned $301,523 in non-employee compensation from those businesses.  However, Lavigne allegedly failed to report any of his insurance or gutter-protection sales income on his federal tax returns.  He also supposedly submitted other documents to the IRS indicating that the Forms 1099-MISC filed by the insurance and gutter-protection companies were erroneous and stating that he did not earn any income for the years 2013 through 2018.

The government also alleges that Lavigne filed for bankruptcy on January 12, 2018, and that as part of the bankruptcy process, Lavigne filed schedules falsely stating that he did not owe any taxes, and he falsely stated under oath that the bankruptcy schedules he filed were truthful and accurate.  He also filed an Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy, in which, it is alleged, he falsely stated that he earned zero gross income in 2016 and 2017.

Finally, the indictment charges that after being notified that he was the target of a federal grand jury investigation, Lavigne sent a letter to the Department of Justice in which he falsely asserted that his bankruptcy attorney had reviewed his 2017 income tax return and advised him that it was complete and correct.

## I.

In its first motion (ECF No. 110), the government asks the Court to take judicial notice of the following facts: (1) the IRS is a federal agency; (2) investigations of violations of the internal revenue laws are within the jurisdiction of the IRS; (3) the Department of Justice (DOJ) is a federal agency; (4) the Tax Division is a component of DOJ; and (5) investigations of violations of internal revenue laws are within the jurisdiction of the Tax Division.  The government says that these facts

are relevant to establishing whether Lavigne violated 18 U.S.C. § 1001, because the government must prove that Lavigne made a statement that "pertained to an activity within the jurisdiction of a federal agency."

Lavigne responds that the government must offer proof to substantiate all of its claims and the relevant facts, and he renews his request for a Bill of Particulars, appending a list of questions to his response that he demands the government answer.

Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As the Sixth Circuit has explained, "judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002). But "judicial notice is available only for 'adjudicative facts,' or the 'facts of the particular case,' as opposed to . . . facts 'which have relevance to legal reasoning.'" *Ibid.*

It is appropriate to grant the government's motion and take judicial notice of the adjudicative facts listed in it. The fact that the IRS and DOJ are federal agencies, and that the Tax Division is a DOJ component, are facts generally known within the jurisdiction of the Court. So too is the fact that the IRS and DOJ investigate and prosecute tax crimes. These facts also can be determined accurately and readily by reference to countless unimpeachable sources, including the federal statutes that created the agencies. *See, e.g.*, *Donaldson v. United States*, 400 U.S. 517, 534-35 (1971) (collecting cases and statutes charging the Internal Revenue Service with enforcing internal revenue laws and investigating criminal conduct); 28 C.F.R. § 0.70 (codifying the Tax Division's authority). The Court properly may take judicial notice of statues and regulations "to

establish the factual context of the case, as opposed to stating the governing law." *Toth*, 306 F.3d at 349; *see also Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority."); *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964) ("The District Court will also take judicial notice of the statutes of the United States.").

Lavigne is not entitled to a Bill of Particulars for all the reasons set out in the opinion denying his earlier motion requesting the same relief. *See* ECF No. 80.

The Court will grant the government's motion to take judicial notice of the five adjudicative facts stated in the government's motion.

II.

For its second motion (ECF No. 111), the government asks the Court to determine before trial the authenticity of Government Exhibits 93, 94, and 95. Exhibits 93 and 95 are letters the defendant purportedly set to the Tax Division of the Department of Justice, in which he falsely claimed that an attorney had reviewed his tax returns and found them to be true and correct. Exhibit 94 is a letter the Tax Division purportedly sent Lavigne in response.

Exhibit 93 consists of an envelope; a typewritten letter from "Donald S La Vigne," dated April 1, 2020; and a copy of a letter from Tax Division attorney Melissa Siskind dated March 23, 2020. *See* Ex. 93, ECF No. 111-1, PageID.809-13. The envelope is addressed to Siskind via the Tax Division's Washington, D.C. post office box and bears a stamp indicating that it was received by the DOJ mailroom on April 7, 2020. *Id.* at PageID.809. Both the envelope and letter bear an address in Clinton Township, Michigan, which allegedly is the address of Lavigne's mother. *Id.* at PageID.809, 812. The letter is in response to the March 23 letter from Siskind advising Lavigne

- 4 -

that a grand jury is investigating his filing of false or no tax returns and inviting Lavigne to contact the DOJ or request to testify.  *Id.* at PageID.810-13.  In the letter, the writer states that "there must have been a terrible misunderstanding, or confusion," because he already was called to attend an in-person tax audit in Detroit with IRS auditor Christine Schaeffer, who had all of his tax returns for the years 2014 through 2016 and did not issue him any assessments.  *Ibid.*  The writer further represents that he worked with his bankruptcy attorney, Nick Balberman, to complete his 2017 and 2018 tax returns; that Balberman advised him that his 2017 return was correct and complete; and that bankruptcy trustee Mark Shapiro reviewed and reached the same conclusion regarding his 2015 and 2016 returns.  *Id.* at PageID.810-11.  The writer suggests that the government verify his tax returns by contacting Schaeffer, Balberman, and Shapiro.  *Ibid.*

Emails indicate that because DOJ received the Lavigne letter at the beginning of the COVID-19 pandemic, when attorneys were encouraged to work from home, Assistant Chief Jorge Almonte scanned a copy of the letter and emailed it to Siskind, stating, "This mail came for you." DOJ Emails, ECF No. 111-4 and 111-5, PageID.823-31.  Almonte's message indicates that a document entitled "XRX9C934E56C31A" is attached to his email.  *Id.* at PageID.826.

Exhibit 94 consists of a June 15, 2020 letter addressed to "Donald LaVigne" at the Clinton Township address.  Ex. 94, ECF No. 111-2, PageID.815-16.  The letter is on DOJ Tax Division letterhead.  *Id.* at PageID.815.  In it, Siskind states that the government is in receipt of Lavigne's April 1, 2020 letter offering information that he would like it to consider in its investigation.  *Ibid.* Noting that Lavigne's communications with Balberman may be protected by attorney-client privilege, Siskind asks if Lavigne would waive that privilege so that the government could speak to Balberman about Lavigne's bankruptcy proceedings and tax returns.  *Id.* at PageID.815.  Siskind sent a copy of the letter to case agent Michael Steller to mail to Lavigne.  DOJ Emails, ECF No.

111-6, PageID.833-34.  Her email indicates that a document entitled "Letter to LaVigne dated 6-15-20" was attached to her email.  *Id.* at PageID.833.

Exhibit 95 consists of a July 3, 2020 letter "Donald S. La Vigne" sent to Siskind "Re: Your letter to me dated June 15, 2020 requesting I waive my attorney client privileges with Mr. Nick Balberman."  Ex. 95, ECF No. 111-3, PageID.818-21.  The writer reiterates that he is granting Siskind permission to speak with Shaeffer, Balberman, and Shapiro to verify the information he provided regarding his tax returns.  *Id.* at PageID.820.  However, he contends that it is not necessary for him to waive attorney-client privileges to prove that he has not committed any crimes.  *Id.* at PageID.821.  The letter indicates that it was sent from an address in Clinton Township, Michigan.  *Ibid.*  Emails again indicate that Siskind received the letter via an email entitled "Scanned Mail," to which a document entitled "DOC003" was attached.  DOJ Emails, ECF No. 111-7, PageID.837-41.

The government contends that Lavigne has waived his right to object to the authenticity of the exhibits because he did not lodge an objection before the final pretrial conference, as required by the Court's scheduling order.  Alternatively, it argues that it has presented sufficient evidence for the Court to determine that the documents are what they purport to be.  It contends that the contents of Exhibits 93 and 95 indicate that Lavigne wrote the letters, as do the signature blocks, the stamp on the envelope containing the first letter, and emails indicating that DOJ received the letters and scanned them to Siskind.  Similarly, the government argues that the letterhead and signature block on Exhibit 94 indicate that Siskind wrote the letter to Lavigne, and that the internal DOJ emails and Lavigne's response indicate that Lavigne actually received it.

Lavigne argues that he should not be penalized for failing to object to the exhibits before the pretrial conference because the government had not provided him the exhibits in an accessible

format before that time.  He notes that his inability to access exhibits led the Court to extend the deadline for filing motions *in limine* and that he is seeking to preclude the same exhibits from being admitted at trial.

As the proponent of the evidence, the government has the obligation to establish that each of the exhibits is authentic, that is, it must produce proof "sufficient to support a finding that [each document is] what the proponent claims it is."  Fed. R. Evid. 901(a); *Lyngaas v. Ag*, 992 F.3d 412, 431 (6th Cir. 2021).  "This requirement does not erect a particularly high hurdle for a proponent to clear."  *United States v. Hall*, 20 F.4th 1085, 1104 (6th Cir. 2022) (citation omitted). Nonetheless, authentication is "a condition precedent to admissibility."  *Ibid.* (quoting *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997)).

The level of proof does not have to be conclusive, Weinstein's Evidence Manual, ¶ 901(a), at 901-19 (5th ed. 1996) ("The [authentication] rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The rest is up to the jury."), and there are a number of ways to achieve that goal, *United States v. Farrad*, 895 F.3d 859, 876 (6th Cir. 2018) ("This task can be accomplished in a number of ways — with testimony from someone with knowledge of the evidence offered, for example, or by pointing to distinctive characteristics that establish authenticity.").  Rule 901(b) provides a non-exclusive list of examples, such as the testimony of a witness with knowledge "that an item is what it is claimed to be," "[a] comparison with an authenticated specimen by an expert witness or the trier of fact," or circumstantial evidence consisting of "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(1), (3), (4).

The government's request essentially asks for a ruling on a potentially disputed fact question before the case comes to trial.  The government must present foundational facts, through witnesses or otherwise, to support the admissibility of its exhibits.  If it calls witnesses, Lavigne would have a right to cross-examine them.  And that right likely would not yield to the government's forfeiture argument.  The government conceded that Lavigne had trouble accessing the exhibits in the provided format before it stipulated to extending the motion-filing deadline.  It would be manifestly unjust to hold Lavigne to the deadlines in the Court's scheduling order after the government agreed to extend them.  Lavigne made numerous filings disputing the authenticity of the exhibits before the stipulated October 3, 2022 deadline.

Even if Lavigne had failed to make timely challenges to the authenticity of the exhibits, that does not mean that the exhibits themselves in fact are authentic.  For the Court to make a threshold authenticity determination, the government still must make a *prima facie* showing that the letters are what the government says they are.  *See* Fed. R. Evid. 901(a).  It is not clear that the government has satisfied that burden at this stage of the proceedings.

Invoking the principle that a piece of evidence can be authenticated through its distinctive characteristics, *see* Fed. R. Evid. 901(b)(4), the government contends that it has met its burden because the letters purportedly from Lavigne include his name and his mother's address and make specific references to the federal criminal proceedings against him.  Even if that were true, the government would have to make that case at trial.  And there is nothing distinctive about Lavigne's name and address, because anyone could have learned that information and produced it in a document.  *United States v. Mitts*, 396 F. App'x 296, 302 (6th Cir. 2010) (finding that a document was not properly authenticated based on contents including a name, telephone, and address).  In contrast, the details about Lavigne's tax payments, or lack thereof, likely are details that "no one

else could have written." *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997). They therefore weigh in favor of authentication, but not without further testimony or information regarding "the genuineness" of the letters. *See id.* at 1149. In *Jones*, the court of appeals upheld a district court finding that a card was written by the defendant not only because it contained details only the defendant could have known, but also because the government produced the recipient, who testified that he knew that the card was sent by the defendant based on its contents. *Id.* at 1149-50; *see also United States v. Crosgrove*, 637 F.3d 646, 658 (6th Cir. 2011) (upholding authenticity determination of letter based on testimony regarding how the letter came to be addressed to the defendant and where the letter was found).

The government is correct that all three letters appear to have been sent in reply to previous communications, and that it "has long been recognized that one of the principal situations where the authenticity of a letter is provable by circumstantial evidence arising out of the letter's context . . . is where it can be shown that the letter was sent in reply to a previous communication." *Winel v. United States*, 365 F.2d 646, 648 (8th Cir. 1966). But even where the "inherent nature of the communication makes it absolutely certain that it is a reply communication," a court relying on circumstantial evidence of authenticity still must be satisfied that there is "proof of its mailing and receipt." *Ibid.* Thus, when the *Winel* court considered the authenticity of a letter, it looked beyond the four corners of the document before making an authenticity determination, including receiving testimony from the individual who purportedly mailed it, as well as evidence regarding the manner in which such letters typically were handled, recorded, and archived. *Ibid.* Similarly, in *National Accident Society v. Spiro*, 78 F. 774, 777 (6th Cir. 1897), the recipient of a challenged letter testified that he personally received a letter in reply to another he himself had mailed.

The government relies on emails to establish that the DOJ received the two letters from Lavigne and that Lavigne received the DOJ's response. "Despite the prevalence of email communication in this day and age, case law in the Sixth Circuit regarding how Rule 901 relates to the authentication of emails is sparse." *United States v. Bertram*, 259 F. Supp. 3d 638, 640 (E.D. Ky. 2017) (collecting cases). Courts in other circuits have looked to the "contents, patterns, and distinctive characteristics" of emails to determine whether they satisfy Rule 901(4)(b), including whether the email addresses include portions of the sender's name and whether the body of the email includes information only the sender would know. *Ibid.* (citing *United States v. Siddiqui*, 235 F.3d 1318 (11th Cir. 2000); *United States v. Fluker*, 698 F.3d 988, 998-1000 (7th Cir. 2012)); *see also United States v. Kilpatrick*, No. 10-20403, 2012 WL 3236727 (E.D. Mich. Aug. 7, 2012) (Edmunds, J.) (determining authenticity of text messages pretrial because they contained distinct auto-signatures, nicknames, unique PIN numbers, and distinctive language patterns). Neither indicia is helpful here, however, because nothing about the characteristics or the contents of the emails indicates that the letters at issue actually were attached to them. The emails contain practically no content whatsoever, and the names of the documents attached to the emails are anything but distinct. Although the government need not elicit testimony from a sender or a recipient of the emails, the "case law on the whole suggests" that it must at least elicit testimony from a witness who "can speak to the email's unique characteristics, contents, and appearance," or seek to authenticate the email attachments through other permissible means. *Bertram*, 259 F. Supp. 3d at 641.

Authentication is not a high bar, and the fact that the letters themselves contain numerous distinctive details that only Lavigne could provide suggests that the government will clear it easily. But because Lavigne separately has moved to exclude the letters, *see* ECF No. 115, and because

the defendant has cross-examination and confrontation rights concerning the disputed foundational facts, the determination on authenticity must await trial.

The Court will deny without prejudice the government's motion to determine before trial the authenticity of Government Exhibits 93, 94, and 95.

III.

Next, Lavigne has moved to exclude several items of evidence from the government's case-in-chief.  ECF No. 115.

A.

First, Lavigne asks the Court to preclude the government from seeking authentication of those same exhibits, Government Exhibits 93, 94, and 95.  He argues that the authenticity of the letters cannot be established; that Exhibits 93 and 95 are inadmissible hearsay, because there is no evidence that he actually wrote the letters or was residing in Michigan during the relevant period; and that Exhibit 94 should be excluded because it is illegible due to a typographical glitch and therefore cannot possibly be authenticated.   He also argues that the admission of the exhibits violates his Fifth Amendment privilege against self-incrimination.  Additionally, Lavigne contends that there is no evidence that he is Donald Stanley Lavigne or the defendant.  None of those arguments, however, are sufficient to preclude the government's attempt to establish admissibility at trial.

If it is established that Lavigne is the author of the letters, then they are not hearsay, even if offered by the government to prove any assertions that the letters may contain.  A defendant's own out-of-court statements are not hearsay.  Fed. R. Evid. 801(d)(2)(A); *see also United States v. Dunnican*, 961 F.3d 859, 873 (6th Cir. 2020) (admitting the defendant's text messages as party

admissions, including portions of messages sent by others, to provide context for the defendant's statements).

The exhibits do not implicate Lavigne's Fifth Amendment privilege against self-incrimination. The privilege "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976); *see also United States v. Doe*, 465 U.S. 605, 610 (1984) ("[T]he Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination." (emphasis in original)); *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ("The sole concern of the Fifth Amendment . . . is governmental coercion."). Lavigne was not compelled to write letters to the Tax Division. To the contrary, it appears that Lavigne voluntarily sent the letters offered as Government Exhibits 93 and 95 in response to a DOJ letter advising Lavigne that he was the subject of a federal grand jury investigation. The cited purpose of the DOJ's initial letter was to "invite" Lavigne and his attorney, if he had one, to contact the DOJ or request an opportunity to testify; the DOJ did not mandate that Lavigne respond. Because Lavigne's preparation of the letters appears to have been "wholly voluntary," the documents "cannot be said to contain compelled testimonial evidence." *Fisher*, 425 U.S. at 410. Lavigne's Fifth Amendment rights would not be violated if the government offered them for admission at trial.

Lavigne's other arguments for excluding the exhibits are even less substantial. He says that Exhibit 94 is illegible, but clearly it is legible. And to the extent that Lavigne contends that he did not write the letters because he is not a person or the defendant, the Court repeatedly has rejected that argument as frivolous and need not consider it again here.

B.

Lavigne also argues in ECF No. 115 that the Court should prevent bankruptcy trustee Mark Shapiro from testifying as an expert witness and exclude from evidence all documents pertaining to his bankruptcy case.  He contends that the Honorable Robert Cleland previously entered a sealed order in *In Re John Doe v. John Roe*, No. 20-51475 (later renumbered as 20-13310), quashing a grand jury subpoena for Shapiro's testimony based on attorney-client privilege.  Lavigne contends that, pursuant to that order, Shapiro cannot be subpoenaed and all evidence from his bankruptcy proceedings must be excluded from trial.  Although Lavigne appears to concede that he does not have an attorney-client relationship with Shapiro, he argues that Shapiro's testimony would "originate from" his bankruptcy case and therefore somehow falls within his attorney-client privilege with his own attorney, Nick Balberman.

Lavigne's argument for excluding all evidence and documents pertaining to his bankruptcy proceedings rests entirely on a sealed order that initially was not part of the record in the present litigation.  Judge Cleland apparently issued the order in *Doe v. Roe*, No. 20-13310, a dispute that arose after the government issued a grand jury subpoena to the attorney who represented Lavigne in his bankruptcy case.  Lavigne insists that Judge Cleland quashed the subpoena and ordered that "bankruptcy evidence could not be included in any form," while the government insists that Judge Cleland did precisely the opposite.

In a supplementary filing, the government furnished a copy of Judge Cleland's order, which it obtained after Judge Cleland granted the government's motion to unseal the order.  In the order, Judge Cleland recites that petitioner John Doe — that is, attorney Balberman — asked the Court to quash in part a subpoena to testify and produce documents before a grand jury, which was considering whether Lavigne willfully filed false tax returns.  *See Doe* Order, ECF No. 159-1,

- 13 -

PageID.1226. Judge Cleland states that Lavigne agreed that the government properly could elicit testimony from Balberman regarding information Lavigne provided to Balberman for later disclosure to the bankruptcy court. *Id.* at PageID.1227. He also found that Lavigne voluntarily disclosed to the government the location and purpose of his confidential communications with Balberman regarding his 2017 tax return, as well the documents Lavigne provided to Balberman so that he could review the tax return and Balberman's legal conclusions. *Ibid.* By making those disclosures to the government with the explicit intent that the government "look into" them to clear him of criminal liability, Judge Cleland ruled, Lavigne had waived the attorney-client privilege. *Id.* at PageID.1227-28. Judge Cleland therefore permitted the government to elicit testimony from Balberman regarding his review of and legal advice regarding Lavigne's 2017 tax return and denied Balberman's motion to quash. *Id.* at PageID.1229.

The government states in its supplemental response that it intends to offer at trial four categories of documents related to Lavigne's prior bankruptcy proceeding. *First*, it intends to offer certain documents that were publicly filed in Lavigne's bankruptcy proceeding or in another proceeding in the United States Tax Court. Publicly-filed documents are not protected by the attorney-client privilege, which is "waived by voluntary disclosure of private communications." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

*Second*, the government intends to offer certain communications between Lavigne and attorney Balberman regarding Lavigne's assets and liabilities and the scope of Balberman's representation, all of which were made before Lavigne filed his bankruptcy petition. The pre-petition communications also are not protected by the attorney-client privilege, because they involved the exchange of information that Lavigne intended to disclose in his bankruptcy proceedings. *See United States v. Hubbard*, 16 F.3d 694, 697 n.3 (6th Cir. 1994) (finding that

information elicited from the defendant's bankruptcy attorney "was not protected by the attorney-client privilege" because what the defendant "communicated to his attorney was to be conveyed to the bankruptcy trustee and the court via written pleading and thus was not protected by the privilege"), *rev'd in part on other grounds*, 514 U.S. 695 (1995); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) ("When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court.").  Moreover, based on Judge Cleland's findings in the *Roe v. Doe* order, it appears that Lavigne also told the government about the relevant communications during the investigation that led to the government to charge Lavigne in the present indictment.  Judge Cleland found that Lavigne's voluntary disclosure of the communications, made with the explicit intent that the government "look into the information" to clear him of criminal liability, constitutes a waiver of the attorney-client privilege.  *See In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005) ("[T]he attorney-client privilege is waived by voluntary disclosure of private communications by an individual . . . to third parties" or by conduct that implies "a consent to disclosure."); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (finding the attorney-client privilege did not apply when clients "revealed [to government investigators] their attorney's legal conclusions and the facts on which those conclusions were based").  This Court agrees.

*Third*, the government intends to offer certain communications made between attorney Balberman's office and the bankruptcy trustee's office.  These communications are not privileged because they are not between an attorney and a client.  *See United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir. 1964) ("[T]he attorney-client privilege extends only to communications between the client and his attorney . . . .").

*Fourth*, the government intends to offer notes made by the bankruptcy trustee, Mark Shapiro. The bankruptcy trustee was not Lavigne's counsel; instead, he was appointed by the United States Trustee to administer the bankruptcy estate. Therefore, no attorney-client relationship existed between Lavigne and Mr. Shapiro, and the notes are not privileged.

Any records maintained by Lavigne's accountant, Andrew Dincolo, likewise are unprivileged. As a general matter, "no confidential accountant-client privilege exists under federal law." *Couch v. United States*, 409 U.S. 322, 335 (1973); *see also* 26 U.S.C. § 7525(a)(2) (limiting the applicability of the statutory privilege to noncriminal proceedings). However, where an attorney retains an accountant to help communicate with his client and render legal advice, statements made by the accountant may fall within the attorney-client privilege. *United States v. Kovel*, 296 F.2d 918, 920-23 (2d Cir. 1961). Here, the government represents that Lavigne retained Mr. Dincolo for accounting services only. If that is the case, then the "*Kovel* Rule" does not apply.

In his own supplemental filing, Lavigne for the first time seeks to exclude the testimony of IRS agent Christine Schaeffer. If that filing is intended as a motion to exclude her testimony, it is untimely, as Lavigne filed the paper after the October 3, 2022 motion *in limine* deadline. *See* ECF No. 121. It also is frivolous. The argument that the IRS may not collect overdue taxes from a taxpayer without first providing them with a summary record of assessment made on Form 23C, "Assessment Certificate-Summary Record of Assessments," is another position often taken by tax protestors and sovereign citizens. *See* IRS Rev. Rul. 2007-21, Rev. Rul. 2007-21, https://www.irs.gov/pub/irs-drop/rr-07-21.pdf. There is no legal requirement, however, that a summary record assessment be provided to a taxpayer before the IRS may proceed with collection activity. Rather, the IRS must furnish a summary record only upon the request of the taxpayer, 26 U.S.C. § 6203, and even then need not provide the record using Form 23C, *see, e.g.*, *Roberts v.*

*Comm'r*, 329 F.3d 1224, 1228 (11th Cir. 2003) (finding that the IRS instead could present an automated summary, or "RACS Report," which replaced Form 23C in 1984); *Hauck v. Comm'r*, 64 F. App'x 492, 493 (6th Cir. 2003) (same).  And it is unclear how the provision of a summary record form implicates the admissibility of Schaeffer's testimony at trial in any case.

Lavigne has not established that any of this evidence is inadmissible on the grounds he asserts.

C.

Lavigne also seeks to exclude evidence of his unspecified prior bad acts.  He says that the government's evidence of any such acts amounts to hearsay, that admission of the government's evidence without live-witness testimony would violate his confrontation right under the Sixth Amendment, that most of the proposed evidence is irrelevant because it is almost 20 years old, that the government cannot prove that the relevant conduct actually occurred, that the government is not being truthful when it contends that it will use the proposed evidence to rebut an accident-or-mistake defense, and that the proposed evidence is far more prejudicial than probative.  He also reiterates the tax-protester arguments he previously made in other filings, including insisting that the statutes he is charged with violating do not impose penalties on anyone because the IRS has not published regulations by which it may enforce said statutes.

The Court already has considered the admissibility of evidence of Lavigne's prior acts of tax avoidance.  After hearing oral argument in response to the government's motion to admit evidence of Lavigne's prior acts of tax avoidance, *see* ECF No. 69, the Court declined to grant the government's motion at that time and ruled that the government may move to admit evidence of defendant Lavigne's other acts of tax avoidance during trial, at which time the Court will consider whether any such evidence properly may be admitted for the permissible purpose of proving intent,

motive, pattern of conduct, or absence of mistake. The order entered stated, erroneously, that the motion was taken under advisement. *See* ECF No. 95. However, that motion should have been denied without prejudice. Here, though, Lavigne has not offered sufficient grounds for the Court to refuse the evidence altogether, since it is entirely unclear from Lavigne's motion what other-acts evidence he wishes to exclude from trial.

Similarly, the parties already have litigated the question whether the government may offer certain business records at trial without testimony from a records custodian. The government instead furnished certifications of authenticity under Evidence Rule 902(11). The Court determined that the government established the authenticity of the documents appended to ECF No. 71, which satisfy the business records exception to the rule against hearsay, and granted the government's motion *in limine* to admit the records without testimony from a records custodian. *See* ECF No. 95. Again, Lavigne has not offered any reasons why the Court should reconsider that order, which plainly allows that Lavigne may lodge other objections at trial.

### D.

Lastly, Lavigne argues that the Court should strike all evidence from and rulings made in the Western District of Kentucky, where Lavigne was arrested and made his first appearance, before the case was transferred to this Court. He says that when he was arrested in Kentucky, he did not see an arrest warrant and was not timely read his *Miranda* rights. However, in its response, the government represents that it will not seek to introduce any such statements at trial. That issue, therefore, is moot.

The defendant's motion to exclude the evidence discussed above will be denied.

The Court will clarify its ruling on the government's motion to admit certain other-acts evidence and deny it without prejudice.

IV.

On September 13, 2022, the government provided Lavigne with digital media containing witness statements it disclosed well before trial under the Jencks Act and Federal Rule of Criminal Procedure 26.2.  It also produced a disc containing its trial exhibits, which do not include any of the witness statements disclosed under the Jencks Act.

Lavigne has moved to exclude at trial seven documents or categories of evidence he indicates the government disclosed to him pursuant to the Jencks Act (ECF No. 131).  Those categories are: (1) emails between Mark Shapiro and Michael Steller dated April 25, 2020; (2) jailhouse calls referenced in an email from Schuch Gabriel to Michael Steller on December 8, 2021; (3) a memorandum of a conversation between Mark Shapiro, Abigale Chinos, and Michael Steller dated February 23, 2021; (4) a memorandum of a conversation between Andrew Dincolo, Michael Steller, and Sherry Rousseau dated December 9, 2021; (5) a memorandum of a conversation between Christine Schaeffer, Scott Putnam, and Sherry Rousseau dated October 24, 2018; (6) a memorandum of a conversation between Mark Shapiro, Melissa Siskind, Abigale Chinos, and Michael Steller dated April 1, 2021; and (7) a memorandum of a conversation between Nick Balberman, Kenneth Mogill, Melissa Siskind, and Abigale Chinos dated January 6, 2021.

Lavigne contends that admission of the December 9, 2021 memorandum would violate his accountant-client privilege and that there is nothing in the October 24, 2018 memorandum to indicate that the meeting actually occurred or that anything recorded is true.  He argues, again, that Judge Cleland's sealed order in *Doe v. Roe* precludes the admission of the other documents.  And he maintains that any recordings of any calls he made from jail — including those referenced in the December 8, 2021 email — are inadmissible because the recordings must have been obtained

through nefarious hacking software.  He also contends that the recordings are hearsay and that their admission would violate his rights under the Fifth and Sixth Amendments.

According to the government, most of the evidence Lavigne challenges in this motion will not be offered at trial.  The government states that it does not seek to introduce any of the materials Lavigne seeks to exclude that were produced to him under the Jencks Act.  However, it apparently does intend to offer recordings of calls placed or received by Lavigne when he was in jail, and it argues that the grounds Lavigne asserts for exclusion of that evidence are meritless.

The Court agrees.  The calls do not implicate the Fifth Amendment for the same reason that the letters Lavigne purportedly sent to the DOJ do not implicate the Fifth Amendment: Lavigne was not compelled to place the calls, but rather made them voluntarily (and did so despite receiving warnings that their contents could later be used against him).  *See Fisher*, 425 U.S. at 408.  There is also no evidence that the calls were testimonial in nature.  Because no transcripts or recordings of the calls have yet been placed in the record, there is nothing to indicate that Lavigne placed calls to individuals who, knowing that the conversations were recorded and could be intercepted by law enforcement, intended to bear testimony against him.   Accordingly, the Confrontation Clause also does not apply.  *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (holding that the Confrontation Clause only bars admission of "testimonial statements"); *United States v. Thurman*, 915 F. Supp. 2d 836, 855 (W.D. Ky. 2013) (finding that jailhouse calls did not implicate the Confrontation Clause because they were nontestimonial in nature).

The phone calls likewise are not hearsay for the same reasons that the letters in Government Exhibits 93, 94, and 95 are not hearsay: because any statements Lavigne made during the calls are statements of a party opponent, and any statements made by third parties would not be offered for the truth of the matter asserted.  Fed. R. Evid. 801(c)(2), (d)(2)(A).  And Lavigne has presented no

evidence supporting his accusation that the government obtained the call recordings through hacking or other "nefarious means."  To the contrary, the government states that an IRS Computer Investigation Specialist will testify as to how the recordings were obtained and preserved for trial.

Based on the evidence presented, there is no reason at this stage of the proceedings to preclude the government from offering recordings of Lavigne's jailhouse calls at trial.

The Court will deny Lavigne's motion to exclude the evidence revealed in the government's Jencks Act disclosure.

V.

In his next motion, Lavigne asks for a pretrial ruling excluding what appears to be most of the government's proposed exhibits (ECF No. 132):

(1)  Proposed exhibits 1-11, 31, 32, 35, 36, 40, 42A-100, 102, 109, 115-117, 127-129, 147, 148, 157-161, 164-174, and 177, which he contends are tax return documents obtained from the IRS that have not been properly authenticated;

(2)  Proposed exhibits 12-30, 32-34, 37, 41, 101, 150, 151, 154, 156, 162, 175, 176, and 182, which he contends are IRS communications that do not establish that he owed taxes or ever received any assessment from the IRS;

(3)  Proposed exhibits 103-108, 118-126, and 130-33, which he contends contain information about his bankruptcy proceedings that must be excluded pursuant to Judge Cleland's sealed order in *Doe v. Roe*, of which he asks Court to take judicial notice;

(4)  Proposed exhibits 134-146, 149, 152, 153, and 155, the admission of which he contends would violate his accountant-client privilege and Fifth Amendment privilege against self-incrimination; for these reasons, he also argues that Andrew Dincolo also should not be called as a witness; and

(5)  Proposed exhibits 170 and 178-181, which he contends are video and audio recordings of telephone calls he placed while in custody.  He reiterates the same arguments he made in his motion to exclude Jencks Act statements, where he also sought to exclude the recordings.  *See* ECF No. 131.

Lavigne disputes the authenticity of all of the listed exhibits, contending that the government must produce the custodians of the original documents to prove that the certified copies of each record are true and correct at trial.

The government construes Lavigne's motion as seeking to exclude exhibits primarily on authenticity grounds.  It responds that many of its exhibits are self-authenticating or already have been authenticated, and that it intends to call witnesses to testify that the remaining exhibits are what the government says they are.

Although district courts have broad discretion over matters regarding the admissibility of evidence, *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991), orders *in limine* issued before trial are not always the best procedural tool to address evidentiary issues, especially in bench trials. The "better practice" is "to deal with questions of admissibility of evidence as they arise" at trial. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  The court of appeals has cautioned that "[o]rders in limine which exclude broad categories of evidence should rarely be employed."  *Ibid.*

 It is difficult to imagine a broader motion than Lavigne's, which seeks to exclude 176 of the government's 182 exhibits.  (The only exhibits Lavigne does *not* move to exclude, intentionally or otherwise, are Exhibits 110-114 and Exhibit 163.)  Although he offers five blanket reasons for excluding the exhibits, he does not discuss the specifics of the exhibits themselves.  The contested exhibits are neither described in nor attached to Lavigne's motion and are not otherwise in the

record, limiting the Court's ability to assess the relevancy, authenticity, or prejudicial nature of the challenged evidence.  The Court is "not in a position to rule on the admissibility of any such evidence, or related testimony, without reviewing the materials in context." *Jackson v. O'Reilly Auto. Stores, Inc.*, 131 F. Supp. 3d 756, 760 (M.D. Tenn. 2015); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 575 F. Supp. 3d 924, 940 (S.D. Ohio 2021) (denying motion for a "blanket order" seeking to exclude broad categories of testimony); *United States v. Denton*, 547 F. Supp. 16, 17 (E.D. Tenn. 1982) ("At this time, the Court has no way of knowing (1) whether any or all of the aforementioned evidence will be offered at trial, (2) if so, for what purpose or purposes, (3) whether, if offered, some or all of such evidence might be admissible for one or more purposes, and (4) if admissible, whether its probative value might be outweighed by its prejudicial effect.").  Moreover, Lavigne's motion repeats the same arguments he offered in his other motions *in limine* or in response to the government's evidentiary motions, nearly all of which are without merit for the reasons already explained in the sections above.

The Court properly may decline to rule pretrial on the admissibility of the evidence challenged in Lavigne's blanket motion.  Lavigne's motion to exclude nearly all of the government's exhibits before trial will be denied.

VI.

The government has furnished an adequate basis to take judicial notice of certain adjudicative facts.  But the respective parties have not convinced the Court of the merits of their other evidentiary motions.

Accordingly, it is **ORDERD** that the government's motion to take judicial notice (ECF No. 110) is **GRANTED**.  The Court will take judicial notice of the five adjudicative facts stated in the government's motion.

Accordingly, it is **ORDERED** that the government's motion to determine before trial the authenticity of Government Exhibits 93, 94, and 95 (ECF No. 111) is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendant's motion to exclude the evidence listed in ECF No. 115 is **DENIED**.

It is further **ORDERED** that the government's motion to admit certain other-acts evidence (ECF. No. 69) is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendant's motion to exclude the evidence revealed in the government's Jencks Act disclosure (ECF No. 131) is **DENIED**.

It is further **ORDERED** that the defendant's motion to exclude the government's exhibits (ECF No. 132) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   November 9, 2022