UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                           Case Number 21-20355

v.                                                        Honorable David M. Lawson

DONALD STANLEY LAVIGNE,

                    Defendant.

_____/

## OPINION AFTER TRIAL

### I. Introduction

The government alleges in an indictment that between 2013 and 2018, defendant Donald Stanley Lavigne earned commissions from working as an independent insurance salesman and making sales for a gutter-protection business. Indictment, ¶ 2, ECF No. 1, PageID.1. According to the miscellaneous income forms (Forms 1099-Misc) insurance companies and the gutter-protection company filed with the Internal Revenue Service (IRS), Lavigne earned $301,523 in non-employee compensation from those businesses during those calendar years. *Id.* at ¶ 3, PageID.2. However, Lavigne failed to report any of his insurance or gutter-protection sales income on his federal tax returns, instead reporting that his income was "$0," or reporting only his wife's income. He also submitted other documents to the IRS indicating that the Forms 1099-MISC filed by the insurance and gutter-protection companies were erroneous and stating that he did not earn any reportable income for the years 2013 through 2018. *Id.* at ¶ 5.

The government also alleges that Lavigne filed for bankruptcy on January 12, 2018, and that as part of the bankruptcy process, Lavigne filed schedules falsely stating that he did not owe any taxes, and he falsely stated under oath that the bankruptcy schedules he filed were truthful and accurate. *Id.* at ¶¶ 6-9, PageID.3-4. He also filed an Official Form 107, Statement of Financial

Affairs for Individuals Filing for Bankruptcy, in which, it is alleged, he falsely stated that he earned zero gross income in 2016 and 2017.  *Id.* at ¶ 8.

Finally, the indictment charges that after being notified that he was the target of a federal grand jury investigation, Lavigne sent a letter to the Department of Justice in which he falsely asserted that his bankruptcy attorney had reviewed his 2017 income tax return and advised him that it was complete and correct.  *Id.* at ¶ 10.

Lavigne waived his right to an attorney, asserting his right to represent himself, and the Court accepted the waiver after holding a hearing.  The Court appointed standby counsel for Lavigne.  Thereafter, Lavigne waived his right to a jury trial.  Subsequently, after Lavigne filed certain documents with the Internal Revenue Service (IRS) alleging that standby counsel engaged in improper financial conduct, the Court granted counsel's motion to withdraw as standby counsel. Lavigne persisted in his desire to represent himself.

A trial was scheduled to commence on January 10, 2023.  The defendant failed to appear. The Court issued a bench warrant, and the defendant was arrested and brought to court later that day.  The Court cancelled the defendant's bond and remanded him to the Marshal's custody.  Trial began on January 11, 2023 before the Court sitting without a jury.  The trial continued on January 12 and 13 and February 13 and 14, 2023.  The defendant again was released on bond after the January 13 session.  The government called nine witnesses and presented 112 exhibits that were received in evidence.  The defendant called two witnesses and presented one exhibit that was received in evidence.  The defendant elected not to testify in his own behalf, as is his right.

From the outset of the case, Lavigne has taken the position that he is not the defendant in this case, nor is he a corporation, an estate, or a legal fiction, but rather is "a living man, . . . living on the land."  The defendant is an educated and intelligent man, but he has fallen under the

influence of others who have advanced pseudolegal arguments based on invalid and discredited concepts of law and government. Those arguments are based on specific but irrelevant formalities and language, which he mistakenly believes are significant.

Mr. Lavigne appears to subscribe to the concept that he has two aspects or identities, one which he labels as a "person" or "corporate entity," and the other as his "flesh and blood' form. One spells his name with upper case letters. The other adds spurious and meaningless punctuation to his name. Although Mr. Lavigne puts special significance on these alternative nomenclature forms, these are ineffectual in law and are meaningless paper masks. They have no force or meaning in law, other than that they indicate an intention on Mr. Lavigne's part to evade his lawful obligations and the authority of the Court and other branches of government. Rather, this language is often used by a certain category of tax protester who believes that "the United States Government, including the IRS, is a fraud and that 'they, the sovereign citizens, retain an individual common law identity exempting them from the authority of those fraudulent government institutions.'" *United States v. Gooch*, 595 F. App'x 524, 527 (6th Cir. 2014) (quoting *A Quick Guide to Sovereign Citizens*, Univ. of N.C. Sch. of Gov't (Mar. 2013), http://www.sog.unc.edu/sites/www.sog.unc.edu/files/Sovereign%20citizens%20brief%20guide%20Mar% 2013.pdf).

Lavigne's doppelgänger approach to his personal identity is tied to the idea that government credentials such as birth certificates embody a fictional "strawman," each with its own corresponding bank or trust account that is distinct from the "flesh-and-blood" person. Joshua P. Weir, *Sovereign Citizens: A Reasoned Response to the Madness*, 19 LEWIS & CLARK L. REV. 830, 840 (2015). The strawman operates in the commercial world, the argument goes, so only the strawman is subject to the jurisdiction of a court. *Ibid.* "But since the gold standard was

abolished, [this movement asserts,] the strawman accounts have been used to secure government debt; by filing the right documents, the flesh-and-blood person can 'redeem' money from the strawman account." *United States v. Cook*, No. 18-CR-00019, 2019 WL 2721305, at \*2 (E.D. Tenn. June 28, 2019) (citing J.M. Berger, Geo. Wash. Program on Extremism, *Without Prejudice: What Sovereign Citizens Believe* 6 (June 2016)).

These concepts have no basis in law or fact, and no reasonable person would subscribe to them.  Therefore, based on the record evidence adduced at trial, the Court makes the following findings of fact:

## II. Findings of Fact

1.     The defendant Donald Stanley Lavigne is the person brought before the court and the person named in the indictment.

2.     The defendant submitted to the IRS a Form 1040X, received by the IRS on September 8, 2015 [ex. 4], for tax year 2013 listing $0 adjusted gross income.

3.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

4.     The defendant earned commissions as a seller of insurance products for nine insurance companies in 2013 totaling $87,615.

5.     The defendant received Form 1099-Misc from each insurance company reporting the commissions paid during 2013.

6.     The defendant's misstatement of income on the 2013 Form 1040X could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

7.     The defendant submitted to the IRS a Form 1040, received by the IRS on September 8, 2015 [ex. 5], for tax year 2014 listing on line 22 $0 total income.

8.      The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

9.      The defendant earned commissions as a seller of insurance products for seven insurance companies in 2014 totaling $65,759.

10.     The defendant received Form 1099-Misc from each insurance company reporting the commissions paid during 2014.

11.     The defendant's misstatement of income on the 2014 Form 1040 could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

12.     The defendant submitted to the IRS a Form 1040X, received by the IRS on September 21, 2017 [ex. 6], for tax year 2014 listing on line 1(C) adjusted gross income of $28,459. The defendant's commissions of $65,759 were not reflected in the total income reported on line 1(C).

13.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

14.     The defendant's misstatement of income on the 2014 Form 1040X could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

15.     The defendant submitted to the IRS a Form 1040, received by the IRS on October 13, 2017 [ex. 7], for tax year 2015 listing on line 22 $0 total income.

16.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

17.     The defendant earned commissions as a seller of insurance products for eight insurance companies in 2015 totaling $36,404.

18.     The defendant received Form 1099-Misc from each insurance company reporting the commissions paid during 2015.

19.     The defendant's misstatement of income on the 2015 Form 1040 could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

20.     The defendant submitted to the IRS a Form 1040, received by the IRS on March 2, 2017 [ex. 8], for tax year 2016 listing on line 22 $37,032 as total income.

21.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

22.     The defendant earned commissions as a seller of insurance products for five insurance companies in 2016 totaling $36,532, which was not reflected in the total income reported on line 22.

23.     The defendant received Form 1099-Misc from each insurance company reporting the commissions paid during 2016.

24.     The defendant's misstatement of income on the 2016 Form 1040 could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

25.     The defendant submitted to the IRS a Form 1040 received by the IRS on March 26, 2018 [ex. 9], for tax year 2017 listing on line 22 $0 total income.

26.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

27.     The defendant earned commissions as a seller of insurance products for seven insurance companies in 2017 totaling $39,476.

28.     The defendant received Form 1099-Misc from each insurance company reporting the commissions paid during 2017.

-6-

29.     The defendant's misstatement of income on the 2017 Form 1040 could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

30.     The defendant submitted to the IRS a Form 1040, received by the IRS on November 4, 2019 [ex. 10], for tax year 2018 listing on line 6 $0 total income.

31.     The form was signed by the defendant and contains a jurat indicating that it was signed under the penalty of perjury.

32.     The defendant earned commissions as a seller of insurance products for six insurance companies and as a seller of gutter protection products in 2018 totaling $35,737.

33.     The defendant received Form 1099-Misc from each insurance company and from LeafFilter North LLC reporting the commissions paid during 2018.

34.     The defendant's misstatement of income on the 2018 Form 1040 could have a tendency to influence the IRS in determining the tax owed by the defendant for that year.

35.     On January 12 and 24, 2018, the defendant signed and caused to be filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan case number 18-40418, containing Schedule E/F [ex. 118, 119, 121] in which he reported on Part 4, Line 6b that he owed no tax debt.

36.     The bankruptcy petition was signed under the penalty of perjury.

37.     The statement that the defendant owed no tax debt had a tendency to influence the administration of the bankruptcy estate, because if a creditor is not listed, the creditor — here the United States — would not be notified of the bankruptcy proceedings or its right to file a claim.

38.     When the defendant signed the bankruptcy petition, he had received notices from the IRS that he owed $69,316.25 for income taxes for the years 2008, 2009, and 2013 through 2015.

39.     The defendant's bankruptcy attorney told him that the information the defendant furnished to incorporate into the petition must be true and accurate.

40.     The defendant signed the petition knowing that it contained statements that were false.

41.     The defendant submitted the false statements to the bankruptcy court intending to deceive the court and the trustee about his tax obligations.

42.     As part of the bankruptcy filing, the defendant signed and caused to be submitted bankruptcy Form 107 [ex. 119], which is a statement of financial affairs.

43.     In part 2, question 4 of that form, the defendant stated that his gross income for calendar year 2016 was $0 and his gross income for calendar year 2017 was $6,872.48.

44.     Form 107 was signed under the penalty of perjury.

45.     At the time the defendant signed the form, he had received Form 1099-Misc from insurance companies reporting that he had received commissions paid during 2016 of $36,532 and received bank statements showing direct deposits of commissions during 2017 of $39,476.

46.     The statement by the defendant underreporting his income had a tendency to influence the administration of the bankruptcy estate, because it misled the trustee about potential assets that could be distributed to creditors.

47.     When the defendant signed the bankruptcy petition, he had received Form 1099-Misc from insurance companies reporting the commissions paid during 2016 and bank statements showing direct deposits of commissions in 2017.

48.     The defendant made the statement on Form 107 knowing that it contained statements that were false.

49.     The defendant submitted the false statements to the bankruptcy court intending to deceive the court and the trustee about his income for 2016 and 2017.

50.     The defendant sent a letter dated April 1, 2020 to the Department of Justice Tax Division stating that his bankruptcy attorney and the bankruptcy trustee had reviewed and analyzed his 2017 income tax return and advised the defendant that it was "correct and complete." [ex. 93, 95]

51.     The bankruptcy trustee never told the defendant that he reviewed his tax returns for accuracy or that that they were correct and complete.

52.     The defendant's bankruptcy attorney never told the defendant that his tax returns were correct and complete, and in fact he became alarmed that the returns contained false statements about the defendant's income.

53.     The defendant knew that the statements were false when he submitted the April 1, 2020 letter to the Department of Justice.

54.     The false statements in the letter could have had a tendency to influence the decision of the tax division attorneys on whether to bring charges against the defendant.

55.     The Department of Justice Tax Division is a part of the Executive Branch of the United States government.

56.     The defendant sent several letters to the IRS for the tax years charged in the indictment in which he did not dispute receiving income as commissions from insurance companies and LeafFilter North LLC, but instead stated that the revenue he received was not reportable income because it did not come from a trade or business, since it came from activities in the "private sector."

57.     The defendant has posted messages to his social media accounts that made reference to a book entitled *Cracking the Code*. He has urged readers of his posts to resist reporting income to the IRS when that income was not earned while working in "privileged capacity," which he defines as a government worker, a government contractor, or an elected official.

58.     In the summer of 2017, the defendant participated at a gathering that was memorialized in a video posted on YouTube in which he declared he had been filing tax documents as prescribed by the advice in *Cracking the Code* since 2008. The defendant stated that when contacted by tax authorities, he "communicated back to the IRS and sent them away with a spanking." The defendant also admitted that he "earn[ed] approximately a six-figure income . . . since 2008, so that's . . . a million dollars that has been what has come in." He admitted that he had "paid zero income tax. . . . A million dollars through my front door … not a nickel." [Ex. 170, 304]

59.     At that same meeting, the defendant advocated that "everybody in this country becomes a CTC educated filer and quits sending all their money to the government." He said that his objective is that the government, which he labels "the beast," "runs out of money." Encouraging others at that gathering to follow his tax-return-filing practices, the defendant exhorted, "I am not afraid of the IRS. And anytime they send me anything, I spanked them, and shove it right back up their rear end and tell them to get out my face and they go away."

60.     The IRS sent the defendant a notice in the beginning of 2015 about his tax obligations. The defendant then consulted with Andrew Dincolo, a certified public accountant with 40 years' experience, about income tax matters and an upcoming meeting with IRS examiner Olga Osipova. A subsequent offer to compromise his 2008 tax liability was rejected in writing by the IRS on April 21, 2015. [Ex. 138]

61.    The defendant sent a letter to IRS appeals official Dana Horne on January 4, 2016 in which he asserted that he had been misreporting his income over several previous years because he had misidentified the revenue stated on IRS Forms 1099-Misc as reportable income in 2008 and 2009, when he should have declared "zero dollars" because the revenue was derived from his labor in the private sector.  [Ex. 148]

62.    The defendant told Mr. Dincolo in January 2016 that his income should not have been reported because it resulted from his labor in the private sector.  The defendant sent a note to CPA Dincolo on January 4, 2016 directing him to obtain a copy of *Cracking the Code*.  [Ex. 146] Mr. Dincolo did so and also conducted research on the book's author, Peter Hendrickson.  Mr. Dincolo told the defendant that there was no basis to follow Hendrickson's theories or advice, and Dincolo would have no part of it.

63.    The IRS sent the defendant multiple notices of intent to levy for the tax years for which the defendant had filed tax returns claiming zero income from his insurance commissions. After receiving those notices, the defendant continued to file tax returns that reported zero income from insurance companies and LeafFilter North LLC.

64.    The tax documents that the defendant submitted to the IRS and which were (a) received by that agency on September 8, 2015 [ex. 4], for tax year 2013 listing $0 adjusted gross income; (b) received by the IRS on September 8, 2015 [ex. 5], for tax year 2014 listing on line 22 $0 total income; (c) received by the IRS on September 21, 2017 [ex. 6], for tax year 2014 listing on line 1(C) $28,459 adjusted gross income; (d) received by the IRS on October 13, 2017 [ex. 7], for tax year 2015 listing on line 22 $0 total income; (e) received by the IRS on March 2, 2017 [ex. 8], for tax year 2016 listing on line 22 $37,032 as total income; (f) received by the IRS on March 26, 2018 [ex. 9], for tax year 2017 listing on line 22 $0 total income; and (g) received by the IRS

on November 4, 2019 [ex. 10], for tax year 2018 listing on line 6 $0 total income all contained materially false statements of the defendant's income.

65.     The defendant did not hold a good-faith belief that any of these tax documents were true and correct as to every material matter pertaining to the reported income.

66.     The defendant acted willfully when he filed these false tax documents with the IRS.

67.     The bankruptcy petition and schedules that the defendant filed in the United States Bankruptcy Court for the Eastern District of Michigan on January 12 and 24, 2018 [ex. 118, 119, 121], in which he reported that there was no tax debt owed; and the bankruptcy Form 107 [ex. 119], which is a statement of financial affairs, contained materially false statements of the defendant's income.

68.     The defendant made the declarations in these bankruptcy filings knowing they were false and with the intent to deceive the bankruptcy trustee or court.

69.     The letter dated April 1, 2020 that the defendant sent to the Department of Justice Tax Division stating that his bankruptcy attorney and the bankruptcy trustee had reviewed and analyzed his 2017 income tax return and advised the defendant that it was "correct and complete" [ex. 93, 95] was materially false.

70.     The defendant made the false statement knowingly and willfully.

### III.  Conclusions of Law

1.     The Court has jurisdiction over the action and the defendant.  *United States v. Titterington*, 374 F.3d 453, 458-59 (6th Cir. 2004) ("The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231, which grants '[t]he district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States.'"); *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016) ("Federal courts have personal

jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court.").

2.      Under federal law, "[a]ny person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .  shall be guilty of a felony."  26 U.S.C. § 7206(1).

3.      To prove that a person has violated this statute, the government must prove the following elements beyond a reasonable doubt:

A.      That the defendant made and subscribed a tax return that was false as to a material matter;

B.      That the defendant signed the return under penalties of perjury;

C.      That the defendant did not believe that that the return was true and correct as to every material matter; and

D.      That the defendant acted willfully.

*United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002) (citing *United States v. Bishop*, 412 U.S. 346, 350 (1973)); *United States v. Ristovski*, 211 F.3d 1271 (6th Cir. 2000) (table), *as amended* (May 8, 2000).

4.      A defendant acts knowingly when he engages in conduct purposefully, intentionally, or by design, or when he acts with reckless disregard of the high probability of illegality or with a conscious purpose to avoid learning the truth.  *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012) (citing *United States v. Seelig,* 622 F.2d 207, 213 (6th Cir. 1980); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *Cheek v. United States*, 498 U.S. 192, 200 (1991).  In criminal tax cases, a defendant acts willfully when the law imposes

-13-

a duty on the defendant, the defendant knew of this duty, and he voluntarily and intentionally violated that duty.  *Cheek*, 498 U.S. at 201.

5. A statement or representation on a tax return is material if it has a natural tendency to influence or is capable of influencing a decision or action of the IRS.  *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *United States v. Kone*, 307 F.3d 430, 435 (6th Cir. 2002).

6. Income received as commissions for selling insurance, and income received as commissions for selling products, constitutes income from a trade or business that must be reported as income to the IRS.  26 U.S.C. § 61(a)(1) ("Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items . . . [c]ompensation for services, including fees, commissions, fringe benefits, and similar items."); *Perkins v. Comm'r*, 746 F.2d 1187, 1188 (6th Cir. 1984) ("[G]ross income means all income from whatever source derived including compensation for services.").

7. "[A] person's activity constitutes a 'trade or business' when he engages in an activity (1) for the primary purpose of income or profit; and (2) with continuity and regularity."  *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 854, 867 (E.D. Mich. 2010) (citing *Comm'r v. Groetzinger*, 480 U.S. 23, 27-28 (1987) (stating that as used in the tax code, "'[b]usiness' is a very comprehensive term and embraces everything about which a person can be employed") (quoting *Flint v. Stone Tracy Co.*, 220 U.S. 107, 171 (1911) (embracing the Bouvier Dictionary definition, "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit."))); *see also Groetzinger*, 480 U.S. at 35 23, 27 (noting that "[a] sporadic activity, a hobby, or an amusement diversion does not qualify").

8.     Internal Revenue Code section 7701(26) ("The term 'trade or business' includes the performance of the functions of a public office.") does not exclude private sector income from any category of reportable gross income.

9.     Since well before the defendant filed his tax returns in this case, federal courts and the IRS have rejected as patently incorrect or frivolous the argument that a person did not receive reportable income because his revenue was generated by his activity in the private sector. *See Kelly v. United States,* 789 F.2d 94, 97 (1st Cir. 1986) (holding that a party advances a frivolous action when he indicates that he had no income from wages on a return despite third-party documents indicating he did receive wages); *Turner v. United States,* 372 F. Supp. 2d 1053, 1060 (S.D. Ohio 2005) (same); *Holker v. United States,* 737 F.2d 751, 753 (8th Cir. 1984); *Herip v. United States,* 106 F. App'x 995, 999 (6th Cir.2004) (holding that reporting a reduction in income from a significant amount to zero is frivolous); *see also Lonsdale v. United States,* 919 F.2d 1440, 1447–48 (10th Cir. 1990) (holding that the court has "made itself clear on these and similar issues numerous times" and the taxpayers "cannot by any stretch of the imagination assert that their arguments regarding the taxability of wages have any support in this circuit"); *Lee v. C.I.R.,* 463 F. App'x 236 (5th Cir. 2012) (finding frivolous the arguments that the taxpayer was not a person subject to tax penalty or levy, and that she was not involved in a trade or business); *Hill v. Comm'r*, 106 T.C.M. (CCH) 586 (T.C. 2013) (rejecting the contention that "a trade or business to include only the performance of the function of a public office and not [a person's] private sector activities for which he received only private sector money" as "frivolous and groundless arguments").

10.     Generally, a defendant's state of mind cannot be proved directly, because no one can read another person's mind and tell what that person is thinking.  But a defendant's state of

mind can be proved indirectly from the surrounding circumstances, which include what the defendant has said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.  It is appropriate to consider the natural and probable results of any acts that the defendant knowingly did, and whether it is reasonable to conclude that the defendant intended those results.

11.     The government has proved beyond a reasonable doubt that the defendant, Donald Stanley Lavigne, within the Eastern District of Michigan, willfully made and subscribed the following tax returns, signed under the penalty of perjury, that were false as to the statement of his income as set forth below, which were material matters, and which he did not believe were true and correct:

> 2013 Form 1040X, filed 9/8/15, Line 1(C), stating Adjusted Gross Income as $0
> 2014 Form 1040, filed 9/8/15, Line 22, sating Total Income as $0
> 2014 Form 1040X, filed 9/21/17, Line 1(C) stating Adjusted Gross Income as $28,459
> 2015 Form 1040, filed 10/13/17, Line 22 stating Total Income as $0
> 2016 Form 1040, filed 3/2/17, Line 22 stating Total Income as $37,032
> 2017 Form 1040, filed 3/26/18, Line 22 stating Total Income as $0
> 2018 Form 1040, filed 11/4/19, Line 6 stating Total Income as $0

12.     The defendant did not act in good faith when he filed those false tax returns with the IRS.  *See United States v. Ambort*, 405 F.3d 1109, 1114 (10th Cir. 2005).

13.     A defendant's state of mind is relevant to establishing a good-faith defense insofar as he argues that he "honestly, but incorrectly believe[d] that [he is] not obliged to pay income taxes." *United States v. Pensyl*, 387 F.3d 456, 459 (6th Cir. 2004).  However, "the tax code's heightened willfulness requirement is intended to ensure that the criminal law does not penalize 'taxpayers who earnestly wish to follow the law' but make 'innocent errors . . . despite the exercise of reasonable care,' due to 'the complexity of the Internal Revenue Code.'" *United States v. Taylor*, 592 F. App'x 431, 436 (6th Cir. 2014) (quoting *Cheek v. United States*, 498 U.S. 192, 205

(1991)).  It does not provide a defense where a defendant believes that "the law does not validly constrain him."  *United States v. Svoboda*, 633 F.3d 479, 484 (6th Cir. 2011).  And a factfinder should reject a defendant's assertedly-honest belief if it is so "unreasonable" as to suggest "nothing more than simple disagreement with known legal duties imposed by the tax laws."  *See Cheek*, 498 U.S. at 203-04.

14.     Courts repeatedly have rejected the theories of individual sovereignty, immunity from prosecution, and that revenue derived from labor for a private enterprise is not reportable income.  *Stubbs v. Comm'r*, 797 F.2d 936, 938 (11th Cir. 1986) (stating that arguments that wages are not taxable income have been "rejected by courts at all levels of the judiciary and are patently frivolous"); *see also Hill v. United States*, 599 F. Supp. 118, 121 (M.D. Tenn. 1984) (holding that "courts are in unanimous agreement" that "[c]ompensation for labor or services, paid in the form of wages or salary, [are] income, subject to the income tax laws currently applicable") (collecting cases).  No reasonable person could honestly believe that income from insurance and sales commissions is not reportable income under the Internal Revenue Code.

15.     American courts universally have held that any argument suggesting that gross income does not include income from any source derived from compensation for services is "totally without merit."  *Perkins*, 746 F.2d at 1188 (6th Cir. 1984).  Equally meritless are arguments that the income tax "is really an excise tax, which can only be assessed against those either licensed or incorporated."  *Martin v. Comm'r*, 756 F.2d 38, 40 (6th Cir. 1985).  Courts likewise have rejected as "frivolous and without merit" arguments that federal income taxes are excise taxes imposed only on nonresident aliens and foreign corporations for the privilege of receiving income from sources within the United States.  *See United States v. Waters*, 876 F.2d

104 (6th Cir. 1989) (table); *Reyes v. Comm'r*, 449 F. App'x 478, 484 (6th Cir. 2011) (collecting cases).  The defendant cannot assert otherwise in good faith.

16.    Under federal law, "[a]ny person who . . .  knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11" of the United States Code is guilty of a felony.  18 U.S.C. § 152(3).

17.    To prove that a person has violated this statute, the government must prove the following elements beyond a reasonable doubt:

    A.    That there was a bankruptcy proceeding pending in a United States Bankruptcy Court, in which the defendant was the debtor;

    B.    That the defendant made a declaration or statement under penalty of perjury in relation to the bankruptcy proceeding;

    C.    That the declaration or statement related to some material matter;

    D.    That the declaration or statement was false; and

    E.    That the defendant made the declaration or statement knowing it was false and with the intent to deceive the bankruptcy trustee or court.

*United States v. Overmyer*, 867 F.2d 937, 949 (6th Cir. 1989); *United States v. James*, 496 F. App'x 541, 550 (6th Cir. 2012); *United States v. Lindholm*, 24 F.3d 1078, 1083 (9th Cir. 1994).

18.    The government has proved beyond a reasonable doubt that the defendant, Donald Stanley Lavigne, within the Eastern District of Michigan, filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan, listing himself as the debtor, containing Schedule E/F [ex. 118, 119, 121], which he signed under the penalty of perjury, in which he reported falsely that there was no tax debt owed to the IRS.

19.     The government has proved beyond a reasonable doubt that the false statements the defendant made in his bankruptcy petition were material, that is, that they had a tendency to influence the administration of the bankruptcy estate.

20.     The government has proved beyond a reasonable doubt that the defendant signed the petition knowing that it contained statements that were false, and that he submitted the false statements to the bankruptcy court intending to deceive the court and the trustee about his tax obligations.

21.     The government has proved beyond a reasonable doubt that as part of his bankruptcy filing, the defendant, Donald Stanley Lavigne, within the Eastern District of Michigan, submitted to the United States Bankruptcy Court for the Eastern District of Michigan bankruptcy Form 107 (a statement of financial affairs) [ex. 119], which he signed under the penalty of perjury, and which contained a false statement of his income.

22.     The government also has proved beyond a reasonable doubt that the statement in Form 107 in which the defendant underreported his income was material, in that it had a tendency to influence the administration of the bankruptcy estate, because it misled the trustee about potential assets that could be distributed to creditors.

23.     The government also has proved beyond a reasonable doubt that the defendant made the statement on Form 107 knowing that it contained statements that were false, and that he submitted the false statements to the bankruptcy court intending to deceive the court and the trustee about his income for 2016 and 2017.

24.     Under federal law, "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . .

makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" is guilty of a felony.  18 U.S.C. § 1001(a)(3).

25.     To prove that a person has violated this statute, the government must prove the following elements beyond a reasonable doubt:

        A.     That the defendant made and used a false writing;

        B.     That the writing contained a statement that was false or fraudulent;

        C.     That the statement was material;

        D.     That the defendant made the false statement knowingly and willfully; and

        E.     That the writing pertained to a matter within the jurisdiction of the executive branch of the United States government.

*United States v. White*, 492 F.3d 380, 396 (6th Cir. 2007) (quoting *United States v. Raithatha*, 385 F.3d 1013, 1022 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1136 (2005)); *United States v. Geisen*, 612 F.3d 471, 489 (6th Cir. 2010).

26.     The government has proved beyond a reasonable doubt that the defendant, Donald Stanley Lavigne, within the Eastern District of Michigan, sent a letter dated April 1, 2020 to the Department of Justice Tax Division, an agency within the Executive Branch of the United States government, in which he stated falsely that his bankruptcy attorney and the bankruptcy trustee had reviewed and analyzed his 2017 income tax return and advised the defendant that it was "correct and complete." [ex. 93, 95]

27.     The government also has proved beyond a reasonable doubt that the defendant knew that that the false statements in the letter could have had a tendency to influence the decision of the tax division attorneys on whether to bring charges against the defendant, and that the statements were false when he submitted the April 1, 2020 letter to the Department of Justice.

IV.  Conclusion and Verdict

Based on the foregoing findings of fact and conclusions of law, it is the determination of the Court, sitting without a jury, that the defendant, Donald Stanley Lavigne, is:

A.     **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2013, in violation of 26 U.S.C. § 7206(1), as charged in Count 1 of the indictment.

B.     **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2014, in violation of 26 U.S.C. § 7206(1), as charged in Count 2 of the indictment.

C.     **GUILTY** of knowingly and willfully making and filing a false individual income tax amended return for tax year 2014, in violation of 26 U.S.C. § 7206(1), as charged in Count 3 of the indictment.

D.     **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2015, in violation of 26 U.S.C. § 7206(1), as charged in Count 4 of the indictment.

E.     **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2016, in violation of 26 U.S.C. § 7206(1), as charged in Count 5 of the indictment.

F.     **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2017, in violation of 26 U.S.C. § 7206(1), as charged in Count 6 of the indictment.

G.    **GUILTY** of knowingly and willfully making and filing a false individual income tax return for tax year 2018, in violation of 26 U.S.C. § 7206(1), as charged in Count 7 of the indictment.

H.    **GUILTY** of knowingly and fraudulently making a material, false statement in relation to a bankruptcy proceeding under Title 11 of the United States Code on January 24, 2018, in violation of 18 U.S.C. § 152(3), as charged in Count 8 of the indictment.

I.    **GUILTY** of knowingly and fraudulently making a material, false statement in relation to a bankruptcy proceeding under Title 11 of the United States Code on January 24, 2018, in violation of 18 U.S.C. § 152(3), as charged in Count 9 of the indictment.

J.    **GUILTY** of knowingly and willfully making a material, false statement in writing in a matter within the jurisdiction of the Executive Branch of the United States to the Department of Justice, Tax Division on April 1, 2020, in violation of 18 U.S.C. § 1001(a)(3), as charged in Count 10 of the indictment.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 14, 2023

-22-